UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CHRISTOPHER J. COX,

    Plaintiff,

v.          06-CV-3197

VINCENT CHILDERS

    Defendant[1].

## Order

Before the Court is Defendant Childers' second motion for summary judgment (d/e 28). For the reasons below, the motion is granted in part and denied in part.

## Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 17, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

## Undisputed Facts

The Court finds the facts below undisputed. Many of them are taken verbatim from Defendant's second motion for summary judgment, to the extent not disputed by Plaintiff.

---

[1] The other defendants were dismissed pursuant to the Court's merit review under 28 U.S.C. Section 1915A.

1. Plaintiff is an inmate currently incarcerated at Graham Correctional Center, Hillsboro, Illinois serving a 22 year sentence for armed violence (People v. Cox (7th Circuit, Christian County, Ill. No. 04-CF-154) on September 7-8, 2004. The Illinois Appellate Court, 5th District, affirmed the convictions and sentences in a Rule 23 Order entered on May 11, 2007. (Exhibit 2 to Defendant's second motion for summary judgment).

2. On September 7-8, 2004, plaintiff resided with his then-wife Catherine L. Cox at 509 White Avenue, Taylorville, Illinois. (Exhibit 1 to Defendant's second motion for summary judgment, p. 2.)

3. At 12:22 a.m. on September 8, 2004, the Taylorville Police Dispatcher received a call from an operations supervisor with Illinois Consolidated Telephone Company who advised that one of her operators had overheard what appeared to be a domestic disturbance during a phone call received from the residence of plaintiff and his wife at 509 White Avenue, Taylorville, Illinois. The operator heard a male subject say "if you called 911 I will break your neck" and "I will fucking kill you." (Exhibit 1 to Defendant's second motion for summary judgment, pp. 6, 8, 15 and 16.)

4. Taylorville Police Officers Evert Nation and Vincent Childers were dispatched to plaintiff's residence. While standing outside the residence, the officers heard a female inside crying for help and a male subject say "I'll fucking kill you." (Exhibit 1 to Defendant's second motion for summary judgment, p. 2.)

5. The officers entered the residence, going into the kitchen where they observed plaintiff pull his wife, Catherine L. Cox, from the floor, placing a large knife to her throat where blood was visible. Plaintiff refused to drop the knife.

6. Officer Childers attempted to calm plaintiff while Officer Nation went to his squad car to retrieve a shotgun loaded with non-lethal bean bag rounds. Plaintiff appeared to Officer Childers to be intoxicated or on drugs at the time. As Officer Nation re-entered through the front door of the residence, plaintiff was still holding a knife to his wife and both were walking backwards out of the kitchen down the hallway. As plaintiff maneuvered her in the hallway, Mrs. Cox was able to wrench herself free, running into the living room area. Officer Nation fired a bean bag round at plaintiff, striking the upper right side of his body. Plaintiff did not drop the knife, but exited into a bedroom as Officer Nation fired a second bean bag round which missed the plaintiff. Plaintiff locked himself in the bedroom, still armed with the knife. (Exhibit 1, pp. 2-3.)

7. Officer Childers continued speaking with the plaintiff through the locked bedroom door, trying to persuade him to come out. Eventually the plaintiff opened the door and came out. Officer Childers avers that he was unable to observe plaintiff's right hand. Both officers ordered plaintiff to lie down on the floor. After being ordered to the floor several times, plaintiff knelt, but would not lie down as the officers had directed. Plaintiff says this was because he was unable to lie down because of the excruciating pain from his right clavicle, which had been

fractured as a result of the bean bag shot. Officer Childers sprayed plaintiff with O.C. spray, the parties dispute when and how. The parties dispute what happened next, except they agree that Plaintiff was eventually handcuffed.

      8. Officers Nation and Childers requested that emergency medical services be dispatched to the scene. They also searched the bedroom into which plaintiff fled, finding a bloody knife under clothes in the closet. The knife was photographed and seized as evidence, along with other items from the house. (Exhibit 1, p. 4.)

      9. Christian County Deputy Sheriff Dan Marron transported plaintiff to the Christian County Sheriff's Office where his eyes were rinsed and he was given fresh clothing. When bruising and swelling were noted on plaintiff's right shoulder, he was transported to St. Vincent's Hospital by Deputy Marron for care before being eventually returned to the County Jail. (Exhibit 1, p. 4.).

      10. The emergency center notes for Plaintiff from St. Vincent Memorial Hospital dated September 8, 2004, state in pertinent part:

> PHYSICAL EXAMINATION: Awake male with heavy ETOH odor, relatively quiet. VITALS: Temp 98.2, blood pressure 116/73, pulse 69, respirations 20. ENT EXAM: The bilateral pupils are equal and reactive to light. He has diffuse conjunctival edema and injection. Fluorescein staining is negative. PH is between 6 and 8 in both eyes. Ear canals are clear, no hemotympanum. No evidence of any skull hematoma. There is a minor abrasion over the right cheek. LUNGS: Clear to auscultation. He has a large abrasion with a superficial laceration over the right subclavian region. There is a large amount of tenderness and swelling in this area. HEART TONES: Normal with no murmur or rub. ABDOMEN: Schaphoid, soft, and nontender. EXTREMITIES: Unremarkable with no acute findings anywhere. NEUROMUSCULAR EXAM: Although he appears to be intoxicated, he is generally cooperative. He answers questions appropriately. He moves all extremities satisfactorily except for the right arm because of the clavicle injury.

      11. An x-ray performed on the plaintiff on September 8, 2004, showed a "comminuted mid to distal right clavicular fracture." The fracture did not heal on its own and Plaintiff had surgery on it in February 2005.

      12. The Illinois Appellate Court order affirmed Plaintiff's conviction for armed violence, stating in pertinent part:

> The defendant was charged with aggravated unlawful restraint and armed violence in case No. 04-CF-154. The evidence at the trial established that on September 7, 2004, the defendant beat and kicked his wife in her back while they were away from home and then returned with her to their residence, where he

continued to brutalize her and shout at her. The police responded to an emergency dispatch about a domestic disturbance at the defendant's residence. As they stood outside the residence, the heard the defendant scream at his wife and tell her that he was going to kill her. The defendant was holding a 6/12-inch knife to his wife's throat when they entered the house. He cut her neck with the knife before she managed to wriggle out of his grasp and flee. The defendant refused to drop the knife as he began to back down the hall toward his bedroom . An officer shot the defendant in the upper chest with a "bean bag" round before the defendant dodged into his bedroom and slammed and locked the door. He was eventually persuaded to exit the bedroom, but it was necessary to subdue him with mace in order to arrest him. The bloody knife with which he had cut his wife's neck was found concealed on a bedroom closet shelf. The defendant was found guilty on the basis of this evidence of aggravated unlawful restraint "while using a deadly weapon, a knife," and armed violence in that he "while armed with a category two weapon, a knife with a blade of at least three inches in length," committed the felony of unlawful restraint.

13. The Illinois Appellate court order confirmed the sentence of 22 years for armed violence (the lesser-included offense of unlawful restraint had been vacated per *People v. Kolton*, 219 Ill.2d 353, 365 (2006)). The appellate court order also upheld the finding that Plaintiff had been armed with a dangerous weapon (a knife with a blade of at least three inches in length) and that Plaintiff had caused great bodily harm to his wife, both statutory predicates to a conviction of armed violence.

**Analysis**

Plaintiff asserts that all the facts upon which his conviction was based are fabricated lies, shored up with fabricated evidence to frame him and cover up governmental misconduct. However, as the Court stated in its merit review, Plaintiff cannot here challenge the validity of his conviction and sentence for armed violence. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Heck v. Humphrey*, 512 U.S. 477, 484-487 (1994). Accordingly, for purposes of this case, the Court must accept as true the facts underlying that conviction as set forth in the Appellate Court order confirming the conviction, as to those facts necessary to sustain the conviction. Thus, for purposes of this order, Plaintiff held a 6 ½ inch knife to his wife's throat, threatening to kill her, and cut her on the throat before she managed to escape.

The only claims not barred by *Heck* and progeny are the claims about Childers' alleged excessive force *after* Plaintiff's wife was able to escape Plaintiff's grasp, for that was the end of the armed violence (at least as for as sustaining the conviction goes). "During the course of an arrest or other "seizure" of a free citizen, the force used to detain the individual must be reasonable in a Fourth Amendment context. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Lawrence v. Kenosha County,* 391 F.3d 837, 843 (7th Cir. 2004). [The determination of reasonableness] involves "a careful balancing of the nature and quality of the intrusion on the

individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations and quotation marks omitted).

Plaintiff's claims are based on four alleged actions by Defendant Childers. The first two regard the bean bag shooting. Plaintiff claims that the shooting was unnecessarily–he says that by that time he was no threat. He also claims that he was shot in the face (sometimes he says point blank directly between the eyes and other times not). As to being shot in the face, Plaintiff's own evidence (the hospital emergency room records) do not support that inference. Plaintiff suffered a clavicular fracture and did have "diffuse conjunctival edema and injection" (swelling of the membrane that lines the eyes). If Plaintiff had been shot directly in the face, he would have had more than a "minor abrasion over his right cheek." Plaintiff's assertion that the medical records are fabricated is speculation and conjecture.

Further, Officer Nation was the officer who fired the shots, not Defendant Childers. Officer Nation was dismissed on merit review because Plaintiff alleged that it was Childers who had used the excessive force, including shooting Plaintiff. Plaintiff never challenged that ruling insofar as the dismissal of Nation and the other officers and it is too late to do so now.

Most importantly, though, even if Nation was still in the case and Plaintiff's face was grazed by one of bean bag shots, Plaintiff does not dispute that he did not heed the officers' orders but instead headed toward the bedroom with the knife and locked the door behind him:

> Upon seeing the other officer with a shotgun, plaintiff turned away from the defendant and the other officer with his frontal position toward the bedroom and away fro [sic] Defendant attempting to keep himself from being physically hurt by trying to get to the bedroom. Upon exiting down the hallway from the other officer and the defenant [sic] is when plaintiff was shot by a bean bag round from the other officer fracturing his right clavicle. To then protect himself plaintiff locked himself in the bedroom, reliquished [sic] position [sic] of the weapon, and plaintiff then began to clam [sic] down.

(d/e 47, p.2). Under these circumstances, Officer Nation acted reasonably in shooting Plaintiff with non-lethal force, in order to try to prevent Plaintiff's retreat to the bedroom with the knife, where he might either hurt himself or, possibly, obtain even more lethal weapons to hurt the officers and his wife. Plaintiff had already threatened to kill his wife and shown his intent and ability to do so, holding a 6 ½ knife across her throat and actually cutting her throat. No reasonable juror could find Officer Nation's actions unreasonable under these circumstances. Thus, summary judgment will be granted as to Plaintiff's excessive force claims regarding the bean bag shots.

What is left are Plaintiff's claims that: 1) Childers unnecessarily sprayed Plaintiff with mace after Plaintiff was already kneeling and unarmed, unable to lie down because of his fractured clavicle and its excruciating pain; 2) Childers intentionally sprayed mace on his own fingers and then gouged Plaintiff's closed eyes, after Plaintiff had already been disarmed and had

already been wrestled to the floor with his arms behind his back; and 2) Childers intentionally grabbed "the bone that was protruding from plaintiff's right clavicle and . . . . squeezed down on this protruding bone with all his might," after Plaintiff's right arm had already been forced behind his back and Plaintiff was lying on the floor. (d/e 47 p.2).

Defendant makes persuasive and appealing arguments about Plaintiff's lack of credibility, but the Court cannot make credibility determinations, nor do the claims have the delusional character that some of Plaintiff's other claims did, which were dismissed on merit review. Plaintiff has consistently maintained throughout this litigation his claims about the pepper spray and the pressure on his fractured clavicle. (Complaint p. 4). Plaintiff says he could not comply with the orders to lie down on the floor because of his injured arm, but that he was kneeling, unarmed, and calmed down when Childers sprayed the mace. He asserts that the eye gouging and clavicle pressure occurred after he was already lying on the ground with his hands behind his back. In contrast to *Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007), there is no video tape of the events here to contradict Plaintiff's version, only Plaintiff's statements and Defendant's statements. The Court must therefore accept Plaintiff's version for purposes of summary judgment. Drawing all reasonable factual inferences in Plaintiff's favor as the Court must at this stage, Plaintiff was no longer a threat when he was maced and pressure was applied to his injured clavicle. *Cf. Scot v. Harris*,

Nor can the Court find that qualified immunity is available on the remaining claims. "When confronted with a claim of qualified immunity, a court must ask first the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Brosseau v. Haugen*, 125 S.Ct. 596, 598 (2004), *quoting* Saucier v. Katz, 533 U.S. 194, 201 (2001). Childers avers that he used only the force necessary to restrain Plaintiff, who was combative, dangerous and failed to obey orders. However, as discussed above, Plaintiff asserts that the macing and pressure on his fractured clavicle were unnecessary because he was already kneeling, unarmed, compliant and injured. A reasonable officer would arguably have known in those circumstances that further force was unnecessary to effect the arrest, and thus was unreasonable. Thus, a reasonable officer would arguably have known that those actions violated Plaintiff's clearly established rights to be free from unreasonable force incident to his arrest. *See Sallenger v. Oakes*, 473 F.3d 731, 741-42 (7th Cir. 2007).

However, the jury trial will be only on those surviving claims, not on the validity of Plaintiff's conviction (fabricated evidence, conspiracy, cover-up, etc.). The jury will be instructed that Plaintiff was convicted of armed violence and is serving his sentence for that conviction. The jury will further be read the following portion of the Illinois Appellate Court order:

> The evidence at the trial established that on September 7, 2004, . . . the police responded to an emergency dispatch about a domestic disturbance at the defendant's residence. As they stood outside the residence, the heard the defendant scream at his wife and tell her that he was going to kill her. The

defendant was holding a 6/12-inch knife to his wife's throat when they entered the house. He cut her neck with the knife before she managed to wriggle out of his grasp and flee. The defendant refused to drop the knife as he began to back down the hall toward his bedroom. An officer shot the defendant in the upper chest with a "bean bag" round before the defendant dodged into his bedroom and slammed and locked the door.

The jury will further be instructed that Plaintiff is not challenging the validity of his conviction or the facts described in the above quoted order. The jury will also be instructed that the court has already dismissed his excessive force claim regarding his need for being shot with the bean bag. The jury will be told that the only claims they are to decide regard Childers' alleged use of pepper spray and his alleged pressure on Plaintiff's fractured clavicle. The Court will instruct the jury to disregard any statements to the contrary. *See Gilbert v. Cook*, 2008 WL 80649 * 3, — F.3d — (7th Cir. 2008). Plaintiff will not be allowed to testify about the reasons why he believes he was wrongly convicted. Nor will Plaintiff be able to recover damages for his fractured clavicle, since that injury was the result of force reasonably used by the officers. The case will focus on what happened after Plaintiff locked himself in the bedroom until Plaintiff was secured by the officers with handcuffs.

IT IS THEREFORE ORDERED THAT:

1) Defendant's second motion for summary judgment is granted in part and denied in part (d/e 28). Summary judgment is granted on Plaintiff's claim that shooting him with bean bags on September 7-8, 2004, amounted to excessive force under the Fourth Amendment. Summary judgment is denied on the following claims of excessive force against Childers arising from the events of September 7-8, 2004:

a) Childers' spraying Plaintiff with mace;

b) Childers' alleged intentionally spraying of mace on his own fingers and then gouging Plaintiff's closed eyes with the maced fingers;

c) Childers alleged intentional grabbing, squeezing and otherwise applying pressure to Plaintiff's fractured clavicle.

2) Defendant's first motion for summary judgment is denied as moot (d/e 19).

3) A final pretrial is scheduled for December 9, 2008 at 1:30 p.m. by video conference. Defendant is directed to submit a proposed final pretrial order by December 1, 2008. The proposed order must include the names of all witnesses to be called. Plaintiff must subpoena any non-party witnesses, unless those non-party witnesses voluntarily appear. If Plaintiff seeks to subpoena any non-party witnesses, he must file, by December 1, 2008, a "motion for subpoenas to issue," listing the name and address of each non-party witness he seeks to subpoena and that

person's expected testimony at trial.[2]  The plaintiff must also provide the witness fee and mileage fee to any witness he seeks to subpoena and is responsible for serving those subpoenas.  Fed. R. Civ. P. 45.

4) Jury selection and jury trial are scheduled for January 5, 2009 at 9:00 a.m. by personal appearance.

Entered this 26th Day of February, 2008.

**s\Harold A. Baker**

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[2]The defendants are responsible for the initial preparation of the final pretrial order under Local Rule 16.3(I)(3). *See Appendix 2* to Local Rules for a sample form. www.ilcd.uscourts.gov/local rules